RECEIVED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA   PM 12: 00

CASE NO.: CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

**BEVERLY M. BENNETT**
301 Swallow Ave.
Sebring, FL 33872

$2.18$-$CV$-$288$-$FCM$-$99CM$

Plaintiff,

v.

**BANK OF AMERICA, N.A.**
℅ Brian T. Moynihan, CEO
Bank of America Corporate Center
100 N. Tryon St.
Charlotte, NC 28255

Defendant.

---

### COMPLAINT FOR DAMAGES WITH JURY DEMAND

Plaintiff Beverly Bennett, by and through counsel, for her Complaint against

Defendant Bank of America, N.A., states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Beverly M. Bennett ("Plaintiff" or "Bennett") is the owner of real

property and improvements located at 1301 Swallow Avenue, Sebring, FL 33872 (the

"Home").

2.    Plaintiff currently maintains the Home as her primary, principal residence

and has so maintained the Home at all times relevant to the allegations of this

Complaint.

3.    Defendant Bank of America, N.A. ("Defendant" or "BANA") previously

1

acted as a servicer of a note executed by Plaintiff (the "Note") and a mortgage on the Home executed by Plaintiff that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.  BANA was the servicer of the Loan at all times relevant to this Complaint until servicing rights transferred from BANA to Non-Party Select Portfolio Servicing Inc. ("SPS") effective February 16, 2018.

5.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

6.  This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.41 of Regulation X.

7.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as her primary residence within this District, Defendant does business within this District, and the actions giving rise to the causes of action in this Complaint, *infra*, occurred within this District.

8.  The Court has supplemental jurisdiction to hear any and all state law claims pleaded, *infra*, or subsequently arising pursuant to 28 U.S.C. § 1367.

## INTRODUCTION

9.  In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203,

2

124 Stat. 1376 (2010).

10.     Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 ("Regulation X") (February 14, 2013), which became effective on January 10, 2014.

11.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

12.     Defendant is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

13.     Defendant is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

14.     Plaintiff asserts a claim for relief against Defendant for breaches of the specific rules under Regulation X as set forth, *infra*.

15.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

### **FACTUAL BACKGROUND**

### **Prior Litigation and Settlement**

16.     The Loan and BANA's actions alleged to be in violation of Regulation X were the previously the subject of litigation before this Court captioned or otherwise titled *Beverly M. Bennett v. Bank of America, N.A.* assigned Case No. 8:16-cv-00278-VMC-TBM (the "Prior Action").

17.     Specifically, the Prior Action dealt with allegations that BANA committed multiple violations of Regulation X including:

3

a.     Failed to timely review a loss mitigation application submitted by Bennett in violation of 12 C.F.R. § 1024.41;

b.     Improperly moved in support of a judgment of foreclosure in violation of the dual-tracking prohibitions of 12 C.F.R. § 1024.41;

c.     Failed to act with reasonable diligence in obtaining a complete loss mitigation application in violation of 12 C.F.R. § 1024.41; and,

d.     Failed to fully and properly respond to a notice of error in violation of 12 C.F.R. § 1024.35.

18.     Bennett and BANA (collectively, the "Parties") settled the Prior Action pursuant to confidential agreement (the "Settlement") and said parties dismissed the Prior Action via stipulation on or about August 24, 2016.

19.     Any and all allegations of wrongdoing on the part of BANA giving rise to the causes of action alleged in this Complaint, *infra*, occurred after the Settlement was executed by the Parties.

## Post-Settlement Conduct

20.     Before the Prior Action, after BANA eventually reviewed Plaintiff's application and the Parties entered into a "FREDDIE MAC LOAN MODIFICATION AGREEMENT" (the "Modification") effective January 1, 2016. *A copy of the Modification is attached as Exhibit 1.*

21.     Prior to, on, or about October 18, 2017, the effective language of 12 C.F.R. § 1024.41(i) read, in its entirety "[a] servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a

4

borrower's mortgage loan account."

22.     On or about October 19, 2017, the effective language of 12 C.F.R. §
1024.41(i) was amended to read, in its entirety:

> A servicer must comply with the requirements of this section
> for a borrower's loss mitigation application, unless the
> servicer has previously complied with the requirements of
> this section for a complete loss mitigation application
> submitted by the borrower *and the borrower has been
> delinquent at all times since submitting the prior
> complete application*.

12 C.F.R. § 1024.41(i) (emphasis added).

23.     Plaintiff has remained current with her obligations under the Modification
from its effective date through at least October 20, 2017.

24.     Plaintiff suffered a reduction in her work hours and an increase in
expenses which made making the modified payments more and more difficult. In order
to try to alleviate her financial challenges, on or about October 20, 2017, Plaintiff,
through her counsel DannLaw, submitted a loss mitigation application to BANA via
facsimile transmission to (866)580-9307 (the "Application"). *A copy of the cover page
for the Application, which identifies the documentation submitted along with such, is
attached as Exhibit 2.*

25.     As Plaintiff had not been delinquent at all times since her prior submission
of a loss mitigation application to BANA which was subject to the protections of 12
C.F.R. § 1024.41, the Application was subject to the procedures and protections of 12
C.F.R. § 1024.41 per the newly effective language of 12 C.F.R. § 1024.41(i).

26.     BANA received the Application on or about October 20, 2017. See *Exhibit*

2.

27.     Plaintiff, having not received any written notice regarding the Application as of December 4, 2017, sent a notice of error ("NOE #1"), pursuant to 12 C.F.R. § 1024.35(b)(11) alleging that BANA failed to comply with the requirements of 12 C.F.R. §§ 1024.41(b)(2)(i) and 1024.41(c). *A copy of NOE #1 is attached as **Exhibit 3**.*

28.     NOE #1 provided clear instructions to BANA as to how it should respond and the consequences of failing to do so. *See Exhibit 3.*

29.     Plaintiff sent sent NOE #1 to BANA at the address designated by BANA for receipt of notices of error, which was, at all times pertinent to this Complaint:

> Bank of America N.A.
> P.O. Box 942019
> Simi Valley, CA 93094-2019

(the "Designated Address"). *See Exhibit 3.*

30.     BANA received NOE #1 on December 11, 2017. *A copy of tracking information for NOE #1 is attached as **Exhibit 4**.*

31.     On or about December 22, 2017, BANA sent correspondence in response to NOE #1 ("NOE Response #1"). *A copy of NOE Response #1 is attached as **Exhibit 5**.*

32.     NOE Response #1 indicates that any open loss mitigation request for the Loan was closed or otherwise cancelled as of October 13, 2017 as a Special Forbearance Agreement was offered as the Home was in a Presidential Declared Disaster Zone and that review of the Application was not issued until a formal denial of that Forbearance Agreement was received on December 12, 2017. BANA states that no

error occurred, but fails to explain why BANA did not acknowledge or review the Application upon receipt. *See Exhibit 5.*

33.     On January 3, 2018, Plaintiff received correspondence dated December 12, 2017 acknowledging receipt of the Application (the "Acknowledgment Letter") and correspondence dated December 14, 2017 requesting additional and clarifying information to complete the Application (the "Request Letter") (collectively, the "Receipt Letters"). Copies of the receipt letters are attached as **Composite Exhibit 6**.

34.     By and through the Receipt Letters, BANA requested that Plaintiff submit the following documentation to complete the Application:

      a.     Updated pay stubs for the most recent thirty (30) days; and,

      b.     Two months proof of receipt of public assistance payments and a copy of the award letter.

*See Exhibit 6.*

35.     As NOE Response #1 did not make any explicit reference to the Application or otherwise address why it was not in error to disregard an explicit request for loan assistance via the Application simply because a forbearance (which Plaintiff did not actively seek) was offered, Plaintiff sent a notice of error on or about January 15, 2018 ("NOE #2"), pursuant to 12 C.F.R. § 1024.35(b)(11) alleging that BANA failed to properly respond to the errors alleged in NOE #1. *A copy of NOE #2 is attached as Exhibit 7.*

36.     NOE #2 provided clear instructions to BANA as to how it should respond and the consequences of failing to do so. *See Exhibit 7.*

7

37.     Plaintiff sent NOE #2 to BANA at the Designated Address. *See Exhibit 7.*

38.     BANA received NOE #2 on January 23, 2018. *A copy of tracking information for NOE #2 is attached as **Exhibit 8**.*

39.     On January 16, 2018, Plaintiff through DannLaw submitted all of the documents and information requested by and through the Receipt Letters via facsimile transmission to (866)580-9307 (the "Requested Documents"). *A copy of the cover letter for such transmission outlining the documents submitted is attached as **Exhibit 9**.*

40.     At no time since January 16, 2018 has BANA specifically requested any specific documentation or information to be supplied in order to complete the Application.

41.     On or about February 5, 2018, BANA sent correspondence in response to NOE #2 ("NOE Response #2"). *A copy of NOE Response #2 is attached as **Exhibit 10**.*

42.     NOE Response #2 stated that no error occurred as alleged in NOE #1 and NOE #2 stating that BANA did not timely acknowledge the Application because of the forbearance offer due to the fact that "*two workout types cannot be open at the same time...when the documentation was received on October 20, 2017, no case was triggered because an exhibit workout type was open. Again, two workout types cannot be open at the same time*" (emphasis added). *See Exhibit 10.*

43.     Despite Plaintiff having submitted any and all requested information and documentation BANA requested through the Receipt Letters as of January 16, 2018, BANA failed to review the Application for Plaintiff's eligibility for available loss

mitigation options prior to the servicing rights to the Loan transferring to SPS effective February 16, 2018.

44. On or about March 6, 2018, Plaintiff sent a notice of error ("NOE #3"), pursuant to 12 C.F.R. § 1024.35(b)(11) alleging that BANA committed errors in violating 12 C.F.R. § 1024.41(b)(2)(i) by failing to notice that the Application was complete as of January 16, 2018, for violating 12 C.F.R. § 1024.41(c)(2) for failing to review the Application before transferring servicing, and for violating 12 C.F.R. § 1024.35(e) by failing to properly respond to NOE #2. *A copy of NOE #3 is attached as **Exhibit 11**.*

45. NOE #3 provided clear instructions to BANA as to how it should respond and the consequences of failing to do so. *See Exhibit 11.*

46. Plaintiff sent NOE #3 to BANA at the Designated Address. *See Exhibit 11.*

47. BANA received NOE #3 on March 13, 2018. *A copy of tracking information for NOE #3 is attached as **Exhibit 12**.*

48. BANA sent correspondence dated March 23, 2018 to Plaintiff in response to NOE #3 ("NOE Response #3"). *A copy of NOE Response #3 is attached as **Exhibit 13**.*

49. BANA, through NOE Response #3, claimed that no errors occurred as the Application remained incomplete, despite the fact that all information requested through the Receipt Letters was provided on or about January 16, 2018.

50. As a result of BANA's wrongful actions, Plaintiff has incurred costs, fees, and expenses in hiring professional help to attempt to have BANA correct its errors in

servicing the Loan including, but not limited to the drafting and sending of NOE #1, NOE #2, and NOE #3 (collectively, the "NOEs") via Certified Mail.

## DAMAGE TO PLAINTIFF

51.     BANA's actions in delaying the ultimate review of the Application, which had to begin anew with the successor servicer of the Loan, has deprived Plaintiff of much needed funds to meet her basic living expenses.

52.     As a direct and proximate result of BANA's failure to properly and timely review her loan modification for every month that passes by Ms. Bennett falls further and further behind on her monthly obligation and has had fewer funds available for food, utilities and medical expenses.

53.     As Plaintiff must begin the loss mitigation process anew, all of the time, energy, and money spent submitting loss mitigation materials are a sunk cost and Plaintiff must now incur those same costs again with a new servicer.  But for BANA's failure to properly review Ms. Bennett's loss mitigation application in the timely and competent fashion required under 1024.41 Ms. Bennett would have had that financial pressure relieved.

54.     BANA's wrongful and willful actions have caused Plaintiff to suffer frustration and emotional distress driven by the fear that she would not receive the loss mitigation review to which she is entitled which has resulted in loss of sleep, anxiety, depression, embarrassment, and other persistent emotional distress.

10

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY DEFENDANT

55.    BANA's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of BANA's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

56.    At the time of the filing of this Complaint, BANA has had more than Twenty Five Thousand Seventy Five (25,075) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

57.    Plaintiffs have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by BANA against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as *Group Exhibit 14*. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that BANA has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

### COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.41(b)(2)(i)

**(Failure to timely and properly notify a borrower of receipt of a loss mitigation application submission)**

58.    Plaintiff restates and incorporates all of their statements and allegations contained in paragraphs 1 through 57, in their entirety, as if fully rewritten herein.

59.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

60.    12 C.F.R. § 1024.41(b)(2)(i) provides:

> If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
>
> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

61.    Plaintiff, through DannLaw, submitted the Application to BANA on or about October 20, 2017. *See Exhibit 2.*

62.    The Application was not a duplicative request pursuant to 12 C.F.R. § 1024.41(i).

63.    Within five (5) business days of October 20, 2017, that is, on or before October 27, 2017, BANA was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to Plaintiff.

64.    BANA did not send any written notice acknowledging receipt of the Application until December 14, 2017, at the earliest, after Plaintiff sent NOE #1 regarding the lack of such written notice. *See Exhibits 3, 5, and 6.*

65.    BANA's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

66.    In addition to the damages outlined, *supra*, BANA's violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) directly and proximately caused Plaintiff to incur actual damages including, but not limited, to attorneys' fees and expenses in researching, drafting, and sending NOE #1 in an attempt to have BANA properly acknowledge and review the Application.

67.    As a result of BANA's actions, BANA is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO:
## VIOLATION OF 12 C.F.R. § 1024.41(c)(3)

### (Failure to send notice of receipt of a complete application)

68.    Plaintiff restates and incorporates herein each of her statements and allegations contained in paragraphs 1 through 57 in their entirety, as if fully rewritten herein.

69.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))".

70.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

71.     12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1024.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

72.     12 C.F.R. § 1024.41(c)(3) provides that within five (5) business days of receiving a borrowers complete application, a servicer must sent written notice setting forth specific information including that the application is complete and the date the servicer received the complete application.

73.     On January 16, 2018, Plaintiff, through DannLaw, submitted the Requested Documents to BANA via facsimile transmission all. *See Exhibit 9.*

74.     Since January 16, 2018, BANA has not specifically requested any information or documentation that has not already been provided since Plaintiff.

75.     The Application was complete and BANA was in possession of a complete application as of January 16, 2018.

14

76.    To date, BANA has not provided the notice required by 12 C.F.R. § 1024.41(c)(3) stating the date BANA received the completed Application along with all other necessary information.

77.    BANA's failure to send the notice required by 12 C.F.R. § 1024.41(c)(3) relating to the Application within five (5) business days of January 16, 2018 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

78.    BANA's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

79.    As a result of BANA's actions, BANA is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees as further described, *supra*.

## COUNT THREE:
## VIOLATION OF 12 C.F.R. § 1024.41(c)

### (Failure to review a complete application within thirty (30) days)

80.    Plaintiff restates and incorporates herein each of her statements and allegations contained in paragraphs 1 through 57 in their entirety, as if fully rewritten herein.

81.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))".

82.    12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

83.     12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1024.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

84.     12 C.F.R. § 1024.41(c)(1) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:(i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

85.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

86.     There has not been a foreclosure sale scheduled for the Home at any point in time relevant to this Complaint.

87.     On January 16, 2018, Plaintiff, through DannLaw, submitted the Requested Documents to BANA via facsimile transmission all. *See Exhibit 9.*

88.     Since January 16, 2018, BANA has not specifically requested any information or documentation that has not already been provided.

89.     The Application was complete and BANA was in possession of a complete application as of January 16, 2018.

90.     To date, BANA has wholly failed to review the Application for Plaintiff's eligibility for any and all loss mitigation options available to Plaintiff and to subsequently provide the notice required by 12 C.F.R. § 1024.41(c)(1) stating which options, if any, BANA will offer to Plaintiff.

91.     BANA's failure to review the Application within thirty (30) days of its completion as of January 16, 2018 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

92.     BANA's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

93.     As a result of BANA's actions, BANA is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees as further described, *supra*.

### COUNT FOUR:
### VIOLATIONS OF 12 C.F.R. § 1024.35

**(Failure to properly respond to three (3) separate notices of error)**

94.     Plaintiff restates and incorporates herein each of her statements and allegations contained in paragraphs 1 through 57 in their entirety, as if fully rewritten herein.

95.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

96.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

97.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer

18

in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

98.     Each of the NOEs met the requirements of and constituted a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 3, 7, and 11.*

99.     Plaintiff sent each of the NOEs to the designated address. *See Exhibits 3, 4, 7, 8, 11, and 12.*

100.    BANA received each of the NOEs at the Designated Address. *See Exhibits 4, 8, and 12.*

101.    Plaintiff, through NOE #1, alleged that BANA committed errors in the servicing of the Loan by failing to comply with the requirements of 12 C.F.R. §§ 1024.41(b)(2)(i) and 1024.41(c) in acknowledging and reviewing the Application upon receipt of the same. *See Exhibit 3.*

102.    BANA did not correct the alleged errors through NOE Response #1 and state the effective date of such corrections, claiming instead that no errors occurred. *See Exhibit 5.*

103.    BANA failed to perform a reasonable investigation into each of the errors alleged by and through NOE #1.

104.    BANA's failure to reasonably investigate either of the errors alleged through NOE #1 is evidenced by lack of any explanation as to why BANA did not acknowledge or review the Application upon receipt, which was the primary focus of NOE #1. *See Exhibit 5.*

105.   BANA actions in failing to correct or otherwise perform a reasonable investigation into the errors alleged through NOE #1, and provide a proper written response to such, constitute a violation of 12 C.F.R. § 1024.35(e) for each of the errors in NOE #1 that BANA failed to appropriately handle.

106.   Plaintiff, through NOE #2, alleged that BANA committed an error in the servicing of the Loan by failing to properly respond to NOE #1 as NOE Response #1 did not make any explicit reference to the Application or otherwise address why it was not in error to disregard an explicit request for loan assistance via the Application simply because a forbearance (which Plaintiff did not actively seek) was offered. *See Exhibit 7.*

107.   BANA did not correct the alleged error through NOE Response #2 and state the effective date of such corrections, claiming instead that no errors occurred. *See Exhibit 10.*

108.   BANA failed to perform a reasonable investigation into the error alleged by and through NOE #2.

109.   BANA's failure to reasonably investigate the error alleged through NOE #2 is evidenced by the fact that BANA claims that it did not have to acknowledge and review the Application upon receipt because of a temporary loss mitigation offer outstanding because "two workout types cannot be open at the same time" which is in direct conflict with the requirements of 12 C.F.R. § 1024.41, as the commentary to

which states at numerous points that a temporary loss mitigation offer does not absolve a servicer from reviewing a loss mitigation application.[1] *See Exhibit 10.*

110.    BANA actions in failing to correct or otherwise perform a reasonable investigation into the errors alleged through NOE #2, and provide a proper written response to such, constitute a violation of 12 C.F.R. § 1024.35(e) for each of the errors in NOE #2 that BANA failed to appropriately handle.

111.    Plaintiff, through NOE #3, alleged that BANA committed errors in the servicing of the Loan for violating 12 C.F.R. § 1024.41(b)(2)(i) by failing to notice that the Application was complete as of January 16, 2018, for violating 12 C.F.R. § 1024.41(c)(2) by failing to review the Application before transferring servicing, and for violating 12 C.F.R. § 1024.35(e) by failing to properly respond to NOE #2. *See Exhibit 11.*

112.    BANA did not correct the alleged errors through NOE Response #3 and state the effective date of such corrections, claiming instead that no errors occurred. *See Exhibit 12.*

---

[1] Comment 2 of the Official CFPB Interpretation of Section 1024.41(c)(2)(iii): *"Short-term loss mitigation options and incomplete applications.* Section 1024.41(c)(2)(iii) allows a servicer to offer a borrower a short-term payment forbearance program or a short-term repayment plan based on an evaluation of an incomplete loss mitigation application. The servicer must still comply with the other requirements of § 1024.41 with respect to the incomplete loss mitigation application, including the requirement in § 1024.41(b)(2) to review the application to determine if it is complete, the requirement in § 1024.41(b)(1) to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application (see comment 41(b)(1)-4.iii), and the requirement in § 1024.41(b)(2)(i)(B) to provide the borrower with written notice that the servicer acknowledges the receipt of the application and has determined that the application is incomplete." Comment 4.iii of the Official CFPB Interpretation of Section 1024.41(b) "If the borrower remains in compliance with the short-term payment forbearance program or short-term repayment plan, and the borrower does not request further assistance, the servicer may suspend reasonable diligence efforts until near the end of the payment forbearance program or repayment plan. However, if the borrower fails to comply with the program or plan or requests further assistance, the servicer must immediately resume reasonable diligence efforts. Near the end of a short-term payment forbearance program offered based on an evaluation of an incomplete loss mitigation application pursuant to § 1024.41(c)(2)(iii), and prior to the end of the forbearance period, if the borrower remains delinquent, a servicer must contact the borrower to determine if the borrower wishes to complete the loss mitigation application and proceed with a full loss mitigation evaluation."

113.   BANA failed to perform a reasonable investigation into each of the errors alleged by and through NOE #3.

114.   BANA's failure to reasonably investigate any of the errors alleged through NOE #3 is evidenced by the fact that it claims that it did not receive all of the documentation requested by and through the Receipt Letters despite proof of sending Requested Documents being enclosed with NOE #3. Moreover, BANA continued to rely upon flawed reasoning in that it did not have to review the Application because of its offer of the short term forbearance option. *See Exhibit 5.*

115.   BANA actions in failing to correct or otherwise perform a reasonable investigation into the errors alleged through NOE #3, and provide a proper written response to such, constitute a violation of 12 C.F.R. § 1024.35(e) for each of the errors in NOE #3 that BANA failed to appropriately handle.

116.   BANA's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

117.   As a result of BANA's actions, BANA is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees as further described, *supra.*

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Beverly M. Bennett prays for the entry of judgment in her favor and against Defendant Bank of America, N.A., as follows:

A.   A finding that Defendant committed multiple, individually actionable violations of of 12 C.F.R. §§ 1024.35 and 1024.41, as pleaded, *supra;*

B.   Awarding Plaintiff actual damages and statutory damages in an amount to

be determined at trial, but which is expected to exceed $17,000.00.

C.   Awarding Plaintiff costs and reasonable attorneys' fees; and

D.   Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiffs respectfully demands a trial by jury on all such claims that may be so

tried.

Dated April 24, 2018.

Respectfully Submitted,

**THE ADVOCACY GROUP**
200 S.E. 6th Street, Ste. 504
Fort Lauderdale, Florida 33301
Telephone: (954) 282-1858
Facsimile: (844) 786-3694
Email: service@advocacypa.com

*/s/Jessica L. Kerr, Esq.*
Jessica L. Kerr, Esquire
FLORIDA BAR NO. 92810

**DANNLAW**
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*/s/ Marc Dann, Esq.*
(*pro hac vice* to be submitted)